IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARIA LYNN BARNEY,

    Plaintiff,

v.                                                               Case No. 19-1329-JWB

RONALD LYNN WHITAKER,

    Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendant Ronald Whitaker's motion to dismiss. (Doc. 8.) The motion is fully briefed and is ripe for decision. (Docs. 9, 16, 19.) Defendant's motion is DENIED IN PART and GRANTED IN PART for the reasons stated herein.

**I.    Facts and Procedural History**

The facts set forth herein are taken from the allegations set forth in the amended complaint. (Doc. 1, Exh. 2.) Plaintiff Maria Barney is the daughter of Phillip and Edith Whitaker. Both Phillip and Edith are deceased. Edith died on March 26, 2018, and Phillip died in 2014. No estate was opened after Edith's death. Defendant Ronald Whitaker is Edith's son and a resident of Arizona.

Edith suffered from dementia and other mental illness from October 2013 onward. In 2014, Edith and Plaintiff resided in Wichita, Kansas, and Defendant resided in Arizona. Edith moved into an assisted living facility after Phillip died.

On April 4, 2014, a general durable power of attorney was executed for Edith. Pursuant to the power of attorney, both Plaintiff and Defendant were named as attorneys in fact and agents for

1

Edith. Plaintiff and Defendant were also named agents for Edith's health care decisions pursuant to a durable power of attorney for health care decisions that was executed on the same date. As of April 4, 2014, Defendant was not a joint account holder nor a primary beneficiary on any of Edith's financial accounts.

On or about May 12, 2014, Plaintiff was a joint account holder with Edith on a Bank of America (BOA) account. The BOA joint account contained more than $255,000. On an unknown date, but after May 12, 2014, Plaintiff alleges that the BOA joint account was closed and the entire amount was withdrawn. Defendant allegedly drove Edith to the bank to make changes. At an unknown date, BOA contacted Plaintiff to inform her of changes to the joint account. Plaintiff contacted Defendant who told Plaintiff not to worry about the changes and "promised" Plaintiff "that he would make sure that she would receive the inheritance" Plaintiff and her family were due. (Doc. 1, Exh. 2 at 4.) The amended complaint makes several references to other BOA accounts but does not specify the number of accounts Edith held at BOA. Edith held a joint account with Plaintiff, along with other accounts that were held in Edith's name only prior to 2014.

In July 2014, Edith also held accounts at Ameriprise with assets estimated at more than $395,000. The accounts had designated Phillip as a primary beneficiary. The contingent beneficiaries were Defendant, Plaintiff, and Plaintiff's sons, with each contingent beneficiary to receive 25%. The beneficiaries to this account were also changed on or about August 27 to August 30, 2014. Edith named Defendant as the sole beneficiary to the Ameriprise accounts. At this same time period, Defendant was added to other BOA checking accounts.

On October 28, 2014, there was a purchase at the Apple Store in Arizona of $601.52. On October 29, there was a purchase of $47.96 to Lumosity.com. The amended complaint does not allege who made these purchases but states that they were suspicious. The inference is that they

were made by Defendant and were not made for Edith's benefit. On October 30, 2014, Edith executed a new will which named Defendant as the sole heir and executor of her estate. The will was drafted by Defendant. In December 2014, Defendant moved Edith to a facility in Arizona where she lived until her death. Plaintiff alleges that Defendant spent thousands of dollars of Edith's funds on his own personal needs and expenses after Edith's move to Arizona, such as home remodeling, furniture, and ATVs. In October 2016, there was a transfer of $25,000 from a BOA account to AZ Landscape Creations, which is an entity owned by Defendant and his family. Plaintiff alleges that Edith did not have the mental capability to make financial decisions in October 2016 as her dementia was disabling at that time.

After Edith's death, Defendant told Plaintiff that all of Edith's accounts were designated as transfer on death to Defendant and Edith's will named Defendant as the only beneficiary. Therefore, there were no assets for Plaintiff and her family. On April 5, 2018, Defendant withdrew $193,269 from Edith's BOA savings account. At the time of Edith's death, her Ameriprise accounts held more than $400,000.

Plaintiff filed an action for an accounting in Sedgwick County District Court. (Doc. 1, Exh. 1.) Plaintiff then filed an amended complaint, alleging several causes of action including fraudulent transfer, conversion, and promissory estoppel. (Doc. 1, Exh. 2.) Plaintiff also seeks an accounting, declaratory, and injunctive relief. Defendant timely removed the state court action to this court. (Doc. 1.) Defendant filed a motion to dismiss, asserting that Plaintiff has failed to state a claim.

**II.    Standard**

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### III.  Analysis

#### A. Accounting

Plaintiff's first claim is one for accounting pursuant to K.S.A. § 58-662(a). Defendant initially moved to dismiss this claim. (Doc. 9 at 15-16.) In his reply, however, Defendant acknowledges that Plaintiff's claim for an accounting is not subject to dismissal. (Doc. 19 at 1.)

Therefore, Defendant's motion to dismiss this claim is denied.

#### B. Kansas Uniform Fraudulent Transfers Act

In count 2, Plaintiff asserts a claim under the Kansas Uniform Fraudulent Transfers Act ("KUFTA"), K.S.A. § 33-201. Defendant moves for dismissal on the basis that Plaintiff has not sufficiently alleged that a transfer occurred and that Plaintiff is a creditor.

Under the KUFTA, a transfer "is fraudulent as [it applies] to a creditor ... if the debtor made the transfer ... with actual intent to hinder, delay or defraud" the creditor. K.S.A. § 33-204(a)(1). If a Plaintiff establishes that the transfer was fraudulent, KUFTA permits a plaintiff to avoid the transfer "to the extent necessary to satisfy" its claim. *McCain Foods USA, Inc. v. Cent. Processors, Inc.*, 275 Kan. 1, 10, 61 P.3d 68, 75 (2002). The KUFTA defines a creditor and debtor as follows: a creditor is a person who has a claim and a debtor is a person who is liable on a claim. K.S.A. § 33-201(d), (f). The statute further defines a claim as a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

4

undisputed, legal, equitable, secured or unsecured." § 33-201(c). The statute also defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." § 33-201(l).

Defendant contends that no transfer occurred because Plaintiff alleges that he merely took the money for himself. Defendant further contends that Plaintiff has not sufficiently alleged that she is a creditor under the KUFTA. The court agrees. Plaintiff's amended complaint alleges as follows with respect to the KUFTA claim.

> 42. Ronald made multiple transfers of Edith's personal property as described herein for purposes of defrauding Maria and other heirs, depriving her of her rightful interest in such property.
> 43. His actions were in violation of the Uniform Fraudulent Transfers Act, K.S.A. § 33-201 et seq.
> 44. Ronald did not have authority to make such transfers.
> 45. The transfers should be set aside and such property should be restored to its rightful owner, the Estate of Edith Whitaker, so as to return the rightful portion to Maria and other heirs.

(Doc. 1, Exh. 2 at 7-8.)

As discussed in the facts, Plaintiff has alleged that significant funds were transferred out of Edith's accounts and used to purchase items for Defendant. Plaintiff, however, fails to plausibly allege that she is a creditor and that Defendant or Edith is a debtor. The KUFTA requires that a debtor transfer his or her property to defraud the creditor. In her response, Plaintiff contends that she has a claim "against the property of Edith due to her status as a beneficiary, an attorney in fact agent, and joint owner of bank accounts." (Doc. 19 at 8.) Plaintiff fails to cite any authority for the proposition that she is a creditor due to her status as a beneficiary, an attorney in fact, or a joint account holder. Plaintiff has not alleged any facts that would support a finding that Edith was in debt to Plaintiff. Although the facts state that they were joint account holders, there are no facts

alleging that Edith owed funds to Plaintiff. Essentially, Plaintiff's allegations are that she was previously a beneficiary on bank accounts and in Edith's will. As such, Plaintiff argues that she is a creditor. Under Plaintiff's reasoning, Edith or the estate is a debtor. The facts do not support this.

In *Perkins v. Brunger*, 303 S.W.3d 688, 692 (Tenn. Ct. App. 2009), the court held that a sole beneficiary was not a creditor of an estate under Tennessee's fraudulent transfer act under facts somewhat similar to this case. In that case, the defendant was the decedent's attorney-in-fact under a durable power of attorney. The defendant transferred the decedent's real estate to herself prior to the decedent's death. The plaintiff was the sole beneficiary of the decedent's estate. The court held that the plaintiff, as the sole the beneficiary of the decedent's estate, was not and had never been a creditor of the decedent. *Id.* Therefore, the fact that Plaintiff was a beneficiary of Edith's estate, prior to her death, did not make Edith or her estate a debtor owing a debt to Plaintiff.

To the extent Plaintiff argues that Defendant was a debtor, Plaintiff's allegations also do not support this claim under the KUFTA. There are no factual allegations to support a finding that Defendant owed a debt to Plaintiff, as a creditor. Plaintiff argues that she has a claim against defendant because he "controlled the accounts." (Doc. 16 at 8.) These facts do not support a finding that Defendant owed Plaintiff a debt. Defendant was acting as an agent of Edith when he was acting under the power of attorney. The allegations that he converted Edith's assets does not result in a debt to Plaintiff, the contingent beneficiary. Plaintiff cites no authority to support her argument.

Therefore, the court finds that Plaintiff has failed to state a plausible claim against Defendant under the KUFTA.

**C. Conversion**

Defendant moves to dismiss Plaintiff's conversion claim on the basis that the property allegedly converted was Edith's and not Plaintiff's. In Kansas, "[c]onversion is the 'unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights.'" *Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1172 (D. Kan. 2017) (quoting *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 378 P.3d 1090, 1095 (2016)). "[I]n an action for conversion, the petition must allege that at the time of the conversion the plaintiff was either in possession, or had a right to the possession, of the property converted." *Id.* (quoting *Guernsey v. Fulmer*, 66 Kan. 767, 71 P. 578, 578 (1903)).

Defendant contends that Plaintiff cannot plausibly state a claim of conversion because the property allegedly converted was Edith's property. Plaintiff responds that she had a right to possession of the property because she was a beneficiary of the accounts and, with respect to one BOA account, she was a joint account holder. Plaintiff, however, cites no authority for the proposition that a beneficiary of an account has a right to possession at the time the account holder is living. Pursuant to the allegations, the beneficiary designations on Edith's accounts were changed prior to her death. Therefore, with respect to the beneficiary designations, Plaintiff has not alleged that she was a beneficiary at the time of Edith's death. As a named beneficiary prior to Edith's death, Plaintiff had no interest in the account and Edith was free to change the beneficiary designation. *See Nicholas v. Nicholas*, 277 Kan. 171, 183, 83 P.3d 214, 223 (2004) ("K.S.A. 2002 Supp. 9–1215 provides that the owner of a POD bank account retains the right 'to change the designation of beneficiary' and also specifies that the 'interest of the beneficiary shall be considered not to vest until the death of the owner.") Therefore, Plaintiff cannot state a claim of conversion based on her status as a beneficiary on Edith's accounts prior to Edith's death.

7

Plaintiff, however, has also alleged that she was a joint account holder of a BOA account. The court is to presume equal ownership in a joint account absent evidence to the contrary. *See Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 463, 574 P.2d 1382, 1386 (1978). Although a joint account holder can completely dispose of the account, *see id.*, Plaintiff has alleged that Defendant disposed of the assets in the accounts for his personal use. At this stage, the court is to construe allegations in a light most favorable to Plaintiff. As an alleged joint account holder, Plaintiff has sufficiently alleged that she had a right to the possession of the contents in the joint account and that Defendant converted the contents.

In his reply, Defendant asserts that any claim regarding the BOA joint account is barred by the statute of limitations. (Doc. 19 at 4.) The court does not consider arguments raised for the first time in the reply. *See Holick v. Burkhart,* 2019 WL 6771747, at *2, n.4 (D. Kan. Dec. 12, 2019) (court does not consider new arguments raised for the first time in a reply brief.)

Therefore, Defendant's motion to dismiss Plaintiff's conversion claim is granted in part and denied in part.

### D. Promissory Estoppel

Defendant moves for dismissal of Plaintiff's claim of promissory estoppel on the basis that the alleged promise was vague, Defendant lacked the authority to make such a promise, and that Plaintiff has not reasonably relied on the promise. To succeed on a claim of promissory estoppel, Plaintiff must prove that 1) there was a promise, 2) which Defendant reasonably expected Plaintiff to rely on; 3) Plaintiff reasonably relied on the promise to her detriment; and 4) a refusal to enforce the promise would result in a substantial injustice. *Bouton v. Byers*, 50 Kan. App.2d 34, 41, 321 P.3d 780, 787 (2014). Based on the allegations in the amended complaint, the court finds that Plaintiff has stated a plausible claim at this stage in the proceedings.

Therefore, Defendant's motion to dismiss the promissory estoppel claim is denied.

**E. Constructive Trust**

Defendant moves for dismissal of Plaintiff's claim of constructive trust on the basis that it is a remedy and not a substantive claim. In response, Plaintiff asserts that the claim is one for unjust enrichment. In his reply, Defendant agrees that Kansas does construe a claim for a constructive trust as a claim for unjust enrichment. (Doc. 19 at 4.) Defendant then argues the claim should be dismissed for failing to allege that Plaintiff conferred a benefit on Defendant. As stated previously, the court does not consider arguments raised for the first time in a reply brief. Therefore, the court will not consider this argument as Plaintiff has not had an opportunity to address it.[1]

Defendant's motion to dismiss this claim is denied.

**F. Declaratory and Injunctive Relief**

Defendant moves to dismiss Plaintiff's claims for declaratory and injunctive relief on the basis that they cannot survive without a valid claim for substantive relief. As the court has not dismissed all substantive claims in this matter, the motion to dismiss on this basis is denied. The court declines to dismiss the remaining requests for declaratory relief at this time as this issue has no effect on this matter until Plaintiff has succeeded on the merits.

Plaintiff also moves the court to open an estate for Edith. (Doc. 1, Exh. 2 at 11.) Defendant moves to strike this requested relief as this court does not have jurisdiction to administer an estate. Plaintiff has not responded to this argument. Administration of a decedent's estate is not within

---

[1] The court notes that it is not inclined to grant a motion to dismiss on this basis. *See Nelson v. Nelson*, 288 Kan. 570, 580, 205 P.3d 715, 724 (2009) (discussing elements of unjust enrichment in context of constructive trust); *see also Heck v. Archer*, 23 Kan. App.2d 57, 64, 927 P.2d 495, 500 (1996) (discussion of constructive trust and undue influence).

this court's jurisdiction. *Parks v. Kiewel*, No. 6:15-1196-JTM, 2015 WL 7295457, at *5 (D. Kan. Nov. 18, 2015). Therefore, the court lacks jurisdiction to open an estate for Edith.

**IV.     Conclusion**

Defendant's motion to dismiss (Doc. 8) is DENIED IN PART AND GRANTED IN PART. Defendant's motion to dismiss Plaintiff's claim under the KUFTA is granted and the motion to dismiss the conversion claim is granted in part. Defendant's motion to dismiss the remaining claims is denied.

IT IS SO ORDERED this 8th day of April, 2020.

\_\_\_\_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE